**U.S. BANKRUPTCY COURT
DISTRICT OF OREGON
F I L E D
December 11, 2007
Clerk, U.S. Bankruptcy Court**

**Below is an Opinion of the Court.**

ELIZABETH PERRIS
U.S. Bankruptcy Judge

# **NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: ) | Bankruptcy Case |
| ) | No. 07-32420-elp7 |
| DEREK S. FARRINGTON, ) | |
| ) | MEMORANDUM OPINION |
| Debtor. ) | |

Muhlheim Boyd LLP ("MB") is counsel for debtor Derek Farrington ("debtor") who filed a chapter 11[1] bankruptcy case that was later converted to chapter 7. The court approved MB's employment by the debtor in possession. Following the first meeting of creditors, at which counsel for the United States Trustee ("UST") explored information concerning debtor's payment of counsel and counsel's relationship with a creditor of debtor, the UST moved to disqualify MB as counsel for debtor and to require MB to disgorge the retainers it has been paid for its work in connection with this case. The UST took the position that MB is not

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. § 101 et seq., and to the Federal Rules of Bankruptcy Procedure.

Page 1 - MEMORANDUM OPINION

qualified to serve as a professional in the case because it received a postpetition retainer without court approval, it either holds or represents an interest adverse to the estate or is not disinterested, and it violated the disclosure rules for professionals.

For the reasons set out below, I conclude that MB's connections to and receipt of the postpetition retainer from a creditor who loaned the debtor money for the retainer did not prevent MB from being disinterested, but that MB violated the disclosure rules in several respects and should be penalized $10,000 for the violations. MB will be required to disgorge $20,000: the $10,000 retainer received postpetition without court authorization, plus $10,000 of the prepetition retainer as a sanction for the seriously deficient disclosures.

FACTS

The facts are generally not in dispute. In June 2007, debtor was facing foreclosure of one of his properties. An acquaintance, Dr. Michael Shirtcliff, referred debtor to MB for advice. Shirtcliff was a secured creditor of debtor, as well as a person who was interested in possibly buying one of debtor's properties. Shirtcliff had been a client of Keith Boyd, a lawyer at MB, in the late 1980s or early 1990s, but had not had any contact with Boyd for many years.

Boyd met with debtor and Shirtcliff on June 14, 2007, to discuss the upcoming foreclosure sale of debtor's property, scheduled for June 20, 2007, and possible reorganization. When debtor decided to file a bankruptcy petition, Boyd told debtor he would require payment of a $30,000 retainer before he would file the petition, and debtor would need to pay an additional $10,000 retainer for RK Short & Associates, Inc.

Page 2 -  MEMORANDUM OPINION

(Short) for financial consulting services.

Debtor could not afford to pay the retainers, so Shirtcliff agreed to loan debtor the funds necessary for the retainers. On June 18, 2007, MB received a wire transfer of $30,000 directly from RMS Dental Director, Inc./Michael Shirtcliff (collectively "Shirtcliff"), which was a loan from Shirtcliff to debtor. The funds were deposited into MB's trust account. Because debtor did not have time before filing the petition to borrow the additional $10,000 necessary to cover both retainers, MB agreed that $20,000 of the funds in the trust account would be allocated to MB's retainer, and $10,000 would be allocated to Short for his retainer.

MB filed the chapter 11 petition on debtor's behalf on June 19, 2007. On June 21, 2007, debtor filed his Application to Employ Attorneys for Debtor. In that application, he represented that he had paid MB a $20,000 retainer. He did not mention that he had agreed to pay a $30,000 retainer and that he still owed $10,000 of that amount. The application also represented that MB had no connection with any creditor in the case.

Boyd filed an affidavit in support of the application for employment, which contained the same information as the application. The engagement letter attached to the affidavit showed that the firm was requiring a $30,000 retainer.

Also on June 21, MB filed its Rule 2014 Verified Statement. That statement repeated that the firm had no connection with any creditors, and represented that the firm had received a $20,000 prepetition retainer on June 18. The 2014 statement did not disclose that the money for the retainer was borrowed, that the retainer came directly from a creditor,

Page 3 - MEMORANDUM OPINION

or that there was a balance of $10,000 due for the retainer.

After the petition was filed, on June 25, 2007, Shirtcliff wired another $10,000 into MB's attorney trust account, which was a loan to debtor for the remaining $10,000 for the firm's retainer. Debtor had not requested authority from the bankruptcy court to borrow the funds, or to pay any funds to counsel. On that same date, MB issued a check to Short for his $10,000 retainer.

On July 18, 2007, Boyd signed the Disclosure of Compensation of Attorney for Debtor, which disclosed that, to date, counsel had received $20,000. Boyd listed the source of the compensation as "debtor," without also explaining that the funds were borrowed and came directly from debtor's creditor, Shirtcliff. Boyd did not disclose that he had received any postpetition funds from debtor or from Shirtcliff on debtor's behalf.

The bankruptcy schedules, also filed on July 18, listed Shirtcliff as a secured creditor based on a prepetition loan unrelated to the bankruptcy, but did not list him as an unsecured creditor for the $30,000 and $10,000 loans he had made to debtor shortly before and after the bankruptcy filing.

After the August 10, 2007 § 341(a) meeting at which counsel for the UST questioned debtor about the retainers paid to MB and to Short, Boyd filed an Amended Rule 2014 Verified Statement on August 15, 2007. The amended statement disclosed the postpetition receipt of the additional $10,000 of the retainer, and that the source of the payment was a loan to debtor from Shirtcliff. He also filed an Amended Attorney's Disclosure of Compensation, showing receipt of $30,000 for legal services, which he

Page 4 - MEMORANDUM OPINION

stated was a loan to debtor from RMS Dental Director, Inc.

On August 24, 2007, Boyd filed a Second Amended Rule 2014 Verified Statement, which disclosed his previous representation of Shirtcliff and for the first time set out the exact nature of the payment of the retainer--that it was wired directly to MB by Shirtcliff.

## DISCUSSION

In order for a professional, including an attorney, to be employed by the trustee or debtor in possession, the professional must "not hold or represent an interest adverse to the estate" and must be "disinterested." § 327(a).

> To "hold an interest adverse to the estate" means (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.

In re Roberts, 46 B.R. 815, 827 (Bankr. D. Utah 1985), aff'd in part, modified in part; rev'd in part on other grounds, 75 B.R. 402 (D. Utah 1987); In re Tevis, 347 B.R. 679, 688 (9th Cir. BAP 2006). A person is "disinterested" if, in part, the person

> does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

§ 101(14)(C). These tests overlap, and include "a prohibition on representing conflicting interests." Tevis, 347 B.R. at 687.

The Bankruptcy Code and Rules contain several provisions, discussed below, requiring professionals to make disclosures. The UST complains that MB's fees should be disallowed and it should disgorge its retainer

Page 5 - MEMORANDUM OPINION

because its disclosures were incorrect and incomplete. The UST further argues that MB's fees for services to the debtor in possession should be disallowed and it should disgorge its retainer to the extent not used to pay for prepetition services, because MB became not disinterested and obtained an interest adverse to the estate when it received the retainer directly from a creditor of debtor who was a former client of Boyd and received the unauthorized postpetition retainer.

Before applying the law to the facts, there is one factual issue that must be resolved. MB has been inconsistent in how it characterized the June 25, 2007, $10,000 postpetition wire transfer to its trust account. In an email communication to the UST from Boyd dated August 14, 2007, which was in response to questions about the payment raised by the UST, Boyd said that the postpetition payment was "as and for the balance of our retainer." However, Boyd then explained that he had advised debtor and Shirtcliff that that payment "will be treated differently from the sums received prior to filing because those funds will not be earmarked for payment to this firm." In the Amended Rule 2014 Verified Statement MB filed the next day, MB disclosed that the $10,000 it received postpetition was part of its retainer. At oral argument on the UST's motion to disqualify MB and require disgorgement, Boyd took the position that the $10,000 was not part of its retainer, and instead was simply property of the estate being held in trust.

The court finds that the $10,000 paid postpetition was intended to be, and was treated by the parties as, part of the retainer. It was paid as part of the borrowing arranged to fund the retainer. MB certified in the August 15, 2007, Amended Attorney Disclosure that the retainer was

Page 6 - MEMORANDUM OPINION

$30,000 and that the $30,000 had been paid. The only way that could be correct is if the $10,000 paid postpetition was part of the retainer.

1. <u>Disclosures</u>

A professional's application for employment must give certain information, including, as relevant here, "any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, [or] any other party in interest[.]" Fed. R. Bankr. P. 2014(a). The application must be accompanied by a verified statement of the person to be employed describing any connections with debtor, creditors, or other parties in interest. <u>Id.</u> The purpose of the application

> is to provide the court (and the United States Trustee) with information necessary to determine whether the professional's employment meets the broad tests of being in the best interest of the estate . . . . To that end, a failure to disclose any fact which may influence the court's decision may result in a later determination that disclosure was inadequate and sanctions should be imposed[.]

9 <u>Collier on Bankruptcy</u> ¶ 2014.03 (15th ed. Rev. 1997).

Debtors' attorneys are also subject to the requirements of § 329, which requires that any attorney representing a debtor file "a statement of the compensation paid or agreed to be paid" for bankruptcy services, if any payment or agreement was made within a year before bankruptcy, and "the source of such compensation." § 329(a). Counsel must file this statement whether or not the attorney applies to the court for compensation. Rule 2016 implements this requirement, and provides that counsel for a debtor must file, within 15 days of the order for relief, the statement required by § 329. Fed. R. Bankr. P. 2016(b).

In disclosing the fee arrangement, "the applicant must disclose 'the

Page 7 - MEMORANDUM OPINION

precise nature of the fee arrangement,' and not simply identify the
ultimate owner of the funds." <u>In re Park-Helena Corp.</u>, 63 F.3d 877, 881
(9th Cir. 1995). An applicant must

> lay bare all its dealings . . . regarding compensation . . . .
> [The] fee revelations must be direct and comprehensive. Coy, or
> incomplete disclosures . . . are not sufficient.

<u>Id.</u> (quoting <u>In re Saturley</u>, 131 B.R. 509, 516-517 (Bankr. D. Me. 1991)).

The purpose of the required disclosures is to allow the court to "conveniently and carefully scrutinize any adverse interests" of the professional. <u>In re Film Ventures Intern., Inc.</u>, 75 B.R. 250, 253 (9th Cir. BAP 1987). <u>See also</u> <u>In re Granite Partners, L.P.</u>, 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998)("Proper disclosure allows the court to decide, in an informed manner, whether the retention should be approved.") Thus, any arguable conflict must be disclosed, "if only to be explained away." <u>Id.</u> It is not for counsel to interfere with the court's function by choosing "which connections impact disinterestedness and which do not." <u>Id.</u> <u>Accord</u> <u>In re Mehdipour</u>, 202 B.R. 474, 480 (9th Cir. BAP 1996), <u>aff'd</u>, 139 F.3d 1303 (9th Cir. 1998)("Professionals must disclose all connections with the debtor, creditors and parties in interest, no matter how irrelevant or trivial those connections may seem.").

The disclosure rules are literally applied, and "[n]egligent or inadvertent omissions 'do not vitiate the failure to disclose.'" <u>Park Helena Corp.</u>, 63 F.3d at 881 (quoting <u>In re Maui 14K, Ltd.</u>, 133 B.R. 657, 660 (Bankr. D. Haw. 1991)). Failure to comply with the disclosure rules is sanctionable, "even if proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Code provision or any Bankruptcy Rule." <u>Id.</u> at 880. "A bankruptcy court must be able to rely

Page 8 - MEMORANDUM OPINION

on the veracity of the representations by an attorney in an application for employment." In re Lewis, 113 F.3d 1040, 1045 (9th Cir. 1997).

MB's disclosures failed to meet the requirements in more than one way.

First, the application for employment and the original Rule 2014 Verified Statement failed to meet the requirements of Rule 2014. Neither set out the details of the proposed arrangement for compensation, including that the funds for the retainer came from a loan to debtor, and that the prepetition retainer was only a portion of the retainer agreed to be paid. Instead, the application simply states at paragraph 6 that "Applicant has paid MB a retainer of $20,000 for attorneys fees and costs." Although the fee agreement attached to the application for employment showed that a $30,000 retainer was required, the firm failed to explain the discrepancy between the agreed retainer ($30,000) and the actual prepetition retainer ($20,000).

Second, the application for employment and the original and Amended Rule 2014 Verified Statements also did not disclose that Shirtcliff, a creditor with both secured and unsecured claims against the estate, had been a former client of Boyd. There can be no question that Boyd was aware that Shirtcliff was a former client, and that Shirtcliff was a creditor in this case. After all, Shirtcliff was the person who referred debtor to Boyd and Shirtcliff attended the first meeting debtor had with Boyd.

Third, the application and Rule 2014 Verified Statement failed to disclose Shirtcliff as the direct source of the funds MB received into its account for debtor's retainer. Even if the funds belonged to debtor

because debtor had borrowed them, direct payment by the creditor to counsel constitutes a connection between counsel and the creditor that must be disclosed.

Fourth, the July 18, 2007, Disclosure of Compensation of Attorney for Debtor violated Rule 2016 in various ways. It represented that counsel had received $20,000 as a retainer. By July 18, 2007, MB had actually received both the $20,000 prepetition wire transfer and the $10,000 postpetition wire transfer. Counsel was required by Rule 2016 to disclose the entire amount of the retainer that had been received by the date of the disclosure, not just the prepetition portion of the retainer. Counsel's failure to disclose receipt of the postpetition retainer in the initial Disclosure of Compensation of Attorney for Debtor left the UST and the court ignorant of the unauthorized loan to debtor for that retainer, and of the unauthorized payment of those funds to counsel. MB failed to disclose receipt of that payment until after the § 341(a) meeting, which was two months after receipt.

Under Rule 2016, counsel was required to disclose not only compensation that had been paid, but also any compensation promised to be paid. In re Fraga, 210 B.R. 812, 822 (9th Cir. BAP 1997). To be correct, the disclosure should have reported that the amount received prior to the filing of the initial statement was $30,000. It erroneously described the amount received prior to the filing of the statement as $20,000, and left blank the balance due. Even if one were to accept that in the July 18, 2007, disclosure MB erroneously intended to disclose only the amount paid prepetition, the initial disclosure should have indicated that $20,000 had been received and the balance due was $10,000.

Page 10 - MEMORANDUM OPINION

The disclosure also listed the source of compensation as "debtor," without explaining that the funds for the compensation came from a loan to debtor by Shirtcliff, which funds were wired directly to counsel from Shirtcliff (and not received directly from debtor). Although counsel may be correct that the money for the retainer belonged to debtor, because debtor had agreed to pay Shirtcliff back, nonetheless the payment came directly from the creditor and that fact should have been disclosed.

MB acknowledges that there were problems with its disclosures. But it argues that it did not need to disclose that the retainer was paid with money that had been loaned to debtor. It also argues that it did not need to disclose its prior representation of Shirtcliff, because the connection with Shirtcliff was not a current connection at the time of the disclosure.

Both § 329(a) and Rule 2016 require that debtor's counsel disclose the source of compensation. That includes the fact that the funds for the compensation have been borrowed. It certainly includes the fact that a creditor paid the compensation directly to counsel, even if there was an agreement by debtor to pay those funds back. Regardless of whether that circumstance will affect the court's decision to authorize employment, it is not debtor's nor the attorney's place to decide whether the circumstance is worth mentioning. Granite Partners, L.P., 219 B.R. at 35. Information that the funds for the retainer were borrowed and came directly from the creditor likely would have triggered some questions by the court and the UST. Thus, that information should have been disclosed. Park-Helena Corp., 63 F.3d at 881 (the fee applicant must disclose the precise nature of the fee arrangement).

Page 11 - MEMORANDUM OPINION

Further, the fact that Shirtcliff had not been a client for 15 years does not vitiate the requirement that the firm disclose all connections with a debtor's creditors. Rule 2014 does not require disclosure of only current connections; it requires disclosure of "all of the person's connections" with creditors. As the Ninth Circuit noted in Park-Helena Corp., Rule 2014(a) "assists the court in ensuring that the attorney has no conflicts of interest and is disinterested[.]" 63 F.3d at 881. The court cited with approval In re EWC, 138 B.R. 276, 280-281 (Bankr. W.D. Okla. 1992), in which the Oklahoma bankruptcy court noted that "[n]o matter how old the connection, no matter how trivial it appears, the professional seeking employment must disclose it." 63 F.3d at 882. Here, prior representation of a current creditor, even representation that occurred long ago, needed to be disclosed.

MB argues that any lack of disclosure was inadvertent and not done to mislead the court. That argument does not absolve MB of the consequences of inadequate disclosure. "Even a negligent or inadvertent failure to disclose fully relevant information may result in a denial of all requested fees." Park-Helena, 63 F.3d at 882.

I conclude that counsel violated both Rules 2014 and 2016. Although I do not believe that MB intended to mislead the court or interested parties, the disclosure violations were significant, and the facts that were not disclosed were known to the firm. The person charged with completing the disclosures had a duty to learn the facts and assure that the disclosures were accurate. In this case, either the person completing the disclosures failed to learn the facts, or failed to make sure that the disclosures accurately reflected the known facts.

Page 12 - MEMORANDUM OPINION

Further, MB did not correct the disclosures on its own. The disclosures were corrected only after the UST spent a good deal of time at the § 341(a) meeting attempting to learn the true facts about the arrangement for compensation. MB's lack of disclosure, while not intentionally misleading, was at the least unforgivably sloppy. The failure to lay out the facts of prior representation and the arrangement for compensation, including the postpetition payment of the remaining retainer, left the UST without sufficient information to make an informed decision about whether to oppose employment and left the court without sufficient information to make an informed decision about whether to grant the application to employ MB.

I conclude that an appropriate sanction for the nondisclosure in this case is the reduction of the allowed fees by $10,000 and the requirement that MB disgorge $10,000 from the prepetition retainer. I chose the substantial sanction of $10,000 in order to impress on counsel the need in the future to take great care in investigating the facts, to make thorough and accurate disclosures, and to correct any inadvertent mistakes promptly and without the need for pressure from the UST. In addition, MB must pay to the trustee the $10,000 received postpetition, because the court never authorized a postpetition retainer.

2. <u>Qualification for employment</u>

The question of qualification to be employed as counsel for debtor in possession is a separate question from whether the disclosures made in connection with the application for employment or thereafter were adequate. If a professional is not qualified to be employed under § 327, employment cannot be approved regardless of the accuracy and extent of

Page 13 - MEMORANDUM OPINION

disclosures. "[I]f, at any time during the employment, the person represents or holds an interest adverse to the estate with respect to the subject matter of the employment or if such person is not disinterested[,]" the court may deny compensation. 3 Collier on Bankruptcy ¶ 327.04[4] (15th ed. Rev. 2006)(footnotes omitted).

(a) <u>Interest adverse to the estate and disinterestness - Shirtcliff</u>

The UST argues in her trial memorandum that:

> This Chapter 11 case appears to be planned for Dr. Shirtcliff's benefit and financed by him. Due to Mulheim Boyd's receipt of a pre-petition retainer and an unauthorized post-petition retainer from Dr. Shircliff (<u>sic</u>), Mulheim Boyd is not disinterested and/or holds an interest adverse to the estate in violation of § 327(a).

United States Trustee's Memorandum in Support of (1) Motion to Disqualify Counsel for Debtor-In-Possession and for Disgorgement of Retainer; (2) Motion to Disqualify Financial Consultant and for Disgorgement of Retainer at 10:19-23.

In determining whether counsel represents an interest adverse to the estate, we look to the Oregon rules governing professional conduct. <u>In re Tevis</u>, 347 B.R. 679, 688 (9th Cir. BAP 2006); LBR 9010-1.A.1.a.; LR 83.7. Two of Oregon's Rules of Professional Conduct are potentially pertinent with respect to Shirtcliff, debtor, and MB.

First, ORPC 1.9 governs representation of former clients. That rule prohibits a lawyer from representing a person if the lawyer has previously represented a client "in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless each affected client gives informed consent, confirmed in writing." ORPC 1.9(a). Here, the evidence is that Boyd had represented Shirtcliff approximately 15 years earlier, in

Page 14 - MEMORANDUM OPINION

connection with Shirtcliff's bankruptcy.  That is not a matter substantially related to debtor's bankruptcy.  There is no indication that there is any connection between the two cases, other than that Shirtcliff referred debtor to his former attorney and is a creditor in this case.  Therefore, Boyd is not disqualified under ORPC 1.9 by reason of his prior representation of Shirtcliff.

Second, counsel are prohibited from accepting compensation from one other than the client, except under certain circumstances.  ORPC 1.8(f). Here, the funds for the retainer came directly to the firm from Shirtcliff rather than from debtor.  The UST argues that the way the payment was made constitutes payment of the retainer by Shirtcliff, a creditor of the estate, rather than by debtor.  I disagree.  The evidence is that the money from Shirtcliff was a loan to debtor, for which debtor is obligated to Shirtcliff.  There is no evidence that Shirtcliff intended to pay the retainer himself, on his own behalf, that the two payments were anything other than loans to debtor, or that Shirtcliff is expecting to or actually is controlling the litigation.  While there is no dispute that Shirtcliff was interested in purchasing property from the estate and that he made a series of loans to debtor, that evidence does not establish that this case was planned "for Dr. Shirtcliff's benefit." There is not an adverse interest arising from the way the retainer was paid.

(b) <u>Interest adverse to the estate and disinterestedness - postpetition retainer</u>

The firm's receipt of a portion of its retainer postpetition, which was the proceeds of an unauthorized postpetition loan, requires a


different analysis.

A debtor in possession may obtain unsecured credit without court approval if the incurring of debt is in the ordinary course of business. § 364(a). The loan from Shirtcliff to debtor for the postpetition payment was not in the ordinary course of business. Therefore, in order for debtor to obtain postpetition unsecured credit, he was required to seek court approval. § 364(b). He did not do that, but instead incurred the debt postpetition without the court's knowledge or authorization.

MB's receipt of the unauthorized $10,000 postpetition retainer, which came from the unauthorized loan, put the firm in possession of property that must be turned over to the trustee.[2] Although the failure of MB to promptly obtain the necessary court approval for the $10,000 postpetition unsecured loan and approval of a postpetition retainer is troubling, the court concludes that the facts do not give MB an adverse interest or prevent it from being disinterested. There is no evidence that MB caused Shirtcliff to wire the $10,000 to its trust account postpetition. It has left the money in its trust account, which indicates that MB recognized that the money was potentially property of the estate that could only be disbursed by court order.

This case is distinguishable from an earlier case involving Boyd in which the firm he was with at the time was required to disgorge postpetition fee payments made without court authorization. In re Thurmond, Case No. 683-07538-W7 (Aug. 29, 1991). In this case, MB

---

[2] The issue of whether the estate is entitled to retain the proceeds of an unauthorized postpetition loan is not before the court. There are different approaches to dealing with unauthorized postpetition borrowing. See 3 Collier on Bankruptcy ¶ 364.03[2] (15th ed. Rev. 2007).

Page 16 - MEMORANDUM OPINION

received an unauthorized postpetition retainer which it deposited into its trust account; it did not receive postpetition payments on account of its fees. It must disgorge the unauthorized retainer because it has no right to the retainer.

MB is being separately sanctioned for its failure to promptly and adequately make disclosure of the $10,000 received postpetition. The receipt of the money, which it did not solicit, is not a basis for disqualifying it entirely from employment as counsel for the debtor in possession.

## CONCLUSION

MB's disclosures violated both Rules 2014 and 2016. I conclude that the appropriate sanction for those violations is disgorgement of $10,000 of the prepetition retainer received from debtor and disallowance of $10,000 of fees. In addition, MB must disgorge the $10,000 retainer received postpetition. MB may apply for fees for its services as counsel to the chapter 11 debtor in possession. When the court determines the amount of those fees allowable as an administrative claim, it will reduce the allowance by the $10,000 sanction because of the inadequate disclosures.

Ms. McClurg should prepare the order.

###

cc: Keith Y. Boyd
    Carla G. McClurg
    Tara Schleicher